UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH HARVEY,<br><br>        Plaintiff<br><br>  v.<br><br>PLAINS TOWNSHIP POLICE DEPT., EDWARD J. WALSH, RONALD DOMBROSKI, PLAINS TOWNSHIP BOARD OF COMMISSIONERS and JOAN A. CHUKINAS,<br><br>        Defendants | NO. 3:CV-01-1768<br><br>CIVIL ACTION – LAW<br><br>JUDGE CAPUTO<br><br>ELECTRONICALLY FILED<br><br>JURY TRIAL DEMANDED |

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS
PLAINS TOWNSHIP POLICE DEPARTMENT, EDWARD J. WALSH, RONALD
DOMBROSKI AND PLAINS TOWNSHIP BOARD OF COMMISSIONERS**

AND NOW, Defendants Plains Township Police Department, Edward J. Walsh, Ronald Dombroski and Plains Township Board of Commissioners, by and through their attorneys, Thomas, Thomas & Hafer, LLP, hereby file this Motion for Summary Judgment, and in support thereof aver as follows:

**I.    FACTUAL BACKGROUND**

1. On August 11, 1999, Plaintiff obtained a Protection From Abuse ("PFA") with Order from the Court of Common Pleas of Luzerne County against her then-boyfriend, Edward Olowiany.  [ copy of the Complaint may be found in the Appendix as Exhibit A, para. 13.]

2. At that time, Plaintiff and Edward Olowiany leased and shared an apartment which was owned by Joan Chukinas and located at 80 East Carey Street, Plains, Pennsylvania.  [Exhibit A, para. 12.]

3.     At all times relevant to this incident, including the September 18, 1999 incident itself, Edward Olowiany was named as a tenant on the lease for the apartment located at 80 East Carey Street, Plains, Pennsylvania and was paying one-half of the rent. [A copy of the pertinent portions of the deposition of Plaintiff Elizabeth Harvey may be found in the Appendix as Exhibit B, p. 29.]

4.     Plaintiff and Edward Olowiany had lived in this apartment together for approximately two (2) years. [Exhibit B, p. 38.]

5.     On August 17, 1999, a hearing was held on the PFA Order, which was granted, and required that Plaintiff be granted exclusive possession of the residence located at 80 East Carey Street, Plains, Pennsylvania (hereinafter "the residence") and that Defendant was permitted to pick up his personal belongings. [A copy of the PFA Order may be found in the Appendix as Exhibit C.]

6.     At the hearing, Edward Olowiany asked the judge if he could come by in a few days to pick up furnishings and other belongings to which the judge replied that such details would have to be worked out with the Plaintiff. [Exhibit B, pp. 49-50.]

7.     On the same day as the hearing, August 17, 1999, Edward Olowiany went to the residence to pick up only his personal belongings, such as clothes. [Exhibit B, pp. 44, 61.]

8.     On August 30, 1999, Edward Olowiany's attorney, Girard Mecadon, wrote a letter to Plaintiff indicating Mr. Olowiany's desire to pick up the rest of his belongings in the near future, asking for a time to be set, and setting forth a list of items which Mr. Olowiany claimed to own. [A copy of the August 30, 1999 letter from Girard Mecadon, Esquire to Plaintiff may be found in the Appendix as Exhibit D.]

9. Plaintiff received the letter, opened the letter, read the letter and ignored the letter. [Exhibit B, p. 27, 62, 101.]

10. Having received no response, on September 15, 1999, Girard Mecadon, Esquire again wrote Plaintiff a letter setting forth a date and time that Edward Olowiany would come to the residence to pick up the items referenced in the August 30, 1999 letter. [A copy of the September 15, 1999 letter from Girard Mecadon, Esquire to Plaintiff may be found in the Appendix as Exhibit E.]

11. The letter stated that Edward Olowiany would come to the residence on Saturday, September 18, 1999 at 2:00 p.m., and would be accompanied by the Plains Township Police Department. [Exhibit E.]

12. Although a copy of this letter was not sent to the Plains Township Police Department at the same time, a copy was sent to the landlord Joan Chukinas to make her aware that Mr. Olowiany would be coming to pick up his belongings. [Exhibit E.]

13. In the morning on September 18, 1999 Edward Olowiany contacted the Plains Township Police Department and explained that he wanted to pick up personal belongings from his residence but that a PFA Order was in place and he did not want to get into any trouble, but that the landlord was going to be present. [A copy of the pertinent portions of the deposition of Edward Olowiany may be found in the Appendix as Exhibit F, p. 46-47.]

14. On September 18, 1999 Officer Ronald Dombroski was on duty from 7:00 a.m. to 5:00 p.m. when he was called into the station by dispatch. [A copy of the pertinent portions of the deposition of Officer Ronald Dombroski may be found in the Appendix as Exhibit G, p. 9-10.]

15. Officer Dombroski was told that dispatch had spoken with Edward Olowiany and Attorney Mecadon and was in receipt of the August 30, 1999 and the September 15, 1999 letters to Plaintiff.  [Exhibit G, p. 10.]

16. Officer Dombroski was asked to go to the residence to keep the peace in case Plaintiff showed up, as there was a PFA Order in effect and Mr. Olowiany was going to be removing items from the residence.  [Exhibit G, p. 10, 21.]

17. Officer Dombroski was also given a copy of the August 30, 1999 letter to Plaintiff which listed the items Mr. Olowiany was to recover and a copy of the PFA Order.  [Exhibit G, p. 10-11.]

18. Officer Dombroski arrived at the residence at exactly 2:00 p.m.  [Exhibit G, p. 17.]

19. Edward Olowiany and the landlord, Joan Chukinas, arrived shortly thereafter.  [Exhibit G, p. 17-18.]

20. At no time was the Plaintiff present or in the residence during anything that allegedly took place on September 18, 1999.  [Exhibit B, p. 65;  Exhibit G, p. 28.]

21. Joan Chukinas, Edward Olowiany and Officer Dombroski went to the door of the residence and Chukinas asked whether it was alright to open the door, to which Officer Dombroski responded that Mr. Olowiany was there solely to pick up his things and copies of the letters had been sent to all involved.  [Exhibit F, p. 53;  Exhibit G, p. 18.]

22. The door to the residence was opened by Chukinas and Edward Olowiany went about retrieving the items on the list contained in the August 30, 1999 letter.  [Exhibit F, p. 50;  Exhibit G, p. 21.]

23. Officer Dombroski took no part in helping Mr. Olowiany retrieve his belongings, save making sure that Mr. Olowiany stuck to items which were on the list when he exited the apartment. [Exhibit F, p. 53; Exhibit G, p. 21.]

24. Officer Dombroski was at the residence for approximately 45 minutes from arrival to departure, and Edward Olowiany took about 20-25 minutes to get his things. [Exhibit G, p. 24, 31-32.]

25. Edward Olowiany asked Officer Dombroski whether it was alright for him to drop off the items he had already retrieved so that he could return for more, to which Officer Dombroski said no. [Exhibit F, p. 59; Exhibit G, p. 26.]

**II.     ARGUMENTS**

26. Paragraphs 1 through 25 are incorporated herein as if set forth in full.

27. Federal Rule of Civil Procedure 56, governing summary judgment, is a mechanism for "assessing the proof in order to see whether there is a genuine need for trial." Smith v. CGU, 179 F.Supp.2d 425, 427 (M.D. Pa. 2001).

28. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id.

29. This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Id.

30.     The non-moving party may not rest on the bare allegations contained in his or her pleadings.  Id. at 428.

31.     Once the moving party has shown there to be no genuine issue of material fact, the non-moving party is required to go beyond the pleadings in order to demonstrate specific material facts which give rise to a genuine issue.  Id.

**A.    Summary Judgment Is Warranted As To Plaintiff's Claims Under Section 1983**

32.     Paragraphs 1 through 31 are incorporated herein by reference as if set forth in full.

33.     Section 1983 affords a remedy for deprivations of rights created by federal law, but the redress available is limited and a private person will not be subjected to liability unless the alleged deprivation was committed under color of state law.  Sherry v. Associates Commercial Corp., 60 F.Supp.2d 470, 473 (W.D.Pa. 1998).

34.     Because the "color of state law" element is a threshold issue, there is no liability under section 1983 for those not acting under the color of state law.  Id.

**1.    As To Defendants Plains Township Board of Commissioners and Plains Township Police Department, Specifically**

35.     Paragraphs 1 through 34 are incorporated herein by reference as if set forth in full.

36.     A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely upon the operation of *respondeat superior* principles.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3rd Cir. 1998).

37. To show personal involvement, Plaintiff must prove participation in, personal direction of, or knowledge of and acquiescence in the specific alleged violation. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293 (3rd Cir. 1997).

38. Plaintiff has not alleged any operative facts as to Defendant Plains Township Board of Commissioners or the Plains Township Police Department which would indicate knowledge or acquiescence to any allegedly discriminatory behavior by Police Department or its officers.

39. In fact, the only evidence regarding any such behavior is from Police Chief Edward Walsh who stated that there is no policy in place and that the only instructions any police officer is given during a self repossession is to keep the peace. [Exhibit H, pp. 9, 14.]

WHEREFORE, moving Defendants respectfully request that this Honorable Court grant summary judgment as to Defendants Plains Township Board of Commissioners and the Plains Township Police Department.

**2. As To All Defendants**

40. Paragraphs 1 through 39 are incorporated herein by reference as if set forth in full.

41. In the context of a private repossession of property, mere presence of a police officer "does not, alone, constitute state action causing a deprivation of a protected property interest." <u>Breiner v. Litwhiler</u>, 245 F.Supp.2d 614, 626 (M.D.Pa. 2003).

42.  Only if the police presence lends "a cachet of legality and has the effect of intimidating [the plaintiff] into not exercising his right to resist, thus facilitating the repossession," could the requisite exercise of state authority be found. Id.

43.  Police officers who merely check documentation and do not appear to take sides do not lend the aura of state authority to the actions of otherwise private actors. Id.

44.  Significantly, all of the case law in which a colorable violation of an individual's rights under section 1983 during a private repossession with police present have involved scenarios where the complainant *was present* and cognizant of the police presence. Id.; Vakkas v. Tyson Assoc., 2000 U.S. Dist. LEXIS 3827, *8 (E.D.Pa. 2000), a copy of which is attached as Exhibit I.

45.  Based on existing case law, the crucial question is whether the police officer was **(1)** present simply to stand by in case there was a breach of the peace, or was **(2)** taking an active role that either *affirmatively assisted in the repossession over the debtor's objection or intentionally intimidated the debtor* so as to prevent him from exercising his legal right to object to the repossession. Barrett v. Harwood, 189 F.3d 297, 302-303 (2nd Cir. 1999).

46.  In the present case, Officer Dombroski was asked to be present in order to keep the peace.

47.  Plaintiff was not present during the self repossession by Edward Olowiany.

48.  Officer Dombroski did not aid Olowiany in the removal of his belongings from the apartment.

8

49. As no active role was taken by Officer Dombroski, and the sole reason for his presence was to maintain the peace, Plaintiff cannot set forth a cause of action.

WHEREFORE, moving Defendants respectfully request that this Honorable Court grant summary judgment in their favor.

**B.  Moving Defendants Are Entitled To Qualified Immunity**

50. Paragraphs 1 through 49 are incorporated herein by reference as if set forth in full.

51. The question of whether qualified immunity applies is a pure question of law. McLaughlin v. Watson, 271 F.3d 566, 570 (3rd Cir. 2001).

52. Generally, government officials who perform discretionary functions are provided with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Id.

53. In order to defeat an assertion of qualified immunity, a plaintiff must allege that the official violated a "clearly established" right. McLaughlin, 271 F.3d at 570-571.

54. "Clearly established rights" are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right. Id.

55. The essential inquiry is whether a reasonable official in the defendant's position at the relevant time "could have believed, in light of clearly established law, that [his or her] conduct comported with established standards." Id.

56. As the case law above shows, there is no violation of rights for there being a police presence during a private repossession, even when a complainant is present at the location of the repossession.

57. Moreover, two letters were presented to the Defendants from Olowiany's attorney to Plaintiff whereby she was notified regarding Olowiany's desire to obtain specified personal belongings at a certain time.

58. Further, the Protection From Abuse Order allowed Olowiany to obtain his belongings.

59. Taken together, it cannot be said that the actions of the Defendants would have made a reasonable officer aware of a clear violation of Plaintiff's rights.

WHEREFORE, moving Defendants respectfully submit that they are entitled to qualified immunity and as such, respectfully request that this Honorable Court enter summary judgment in their favor.

Respectfully submitted,

THOMAS, THOMAS & HAFER, LLP

 s/ C. Kent Price
C. Kent Price, Esquire
Attorney ID # 06776
Shawn E. Smith, Esquire
Attorney ID # 86121
305 North Front Street
P.O. Box 999
Harrisburg, PA.  17108
(717) 255-7101

ATTORNEYS FOR DEFENDANTS PLAINS TOWNSHIP POLICE DEPARTMENT, EDWARD J. WALSH, RONALD DOMBROSKI and PLAINS TOWNSHIP BOARD OF COMMISSIONERS

DATE:  June 13, 2003
241458v1

## CERTIFICATE OF SERVICE

AND NOW, this 13th day of June, 2003, I, C. Kent Price, Esquire, for the firm of THOMAS, THOMAS & HAFER, LLP, hereby certify that I have this day served the within document(s) by depositing a copy of the same in the United States Mail, postage prepaid, at Harrisburg, Pennsylvania, addressed to:

Robert T. Panowicz, Esquire
Christine M. Trottini, Esquire
Law Office of Robert T. Panowicz
11 West Market Street, Suite 1122
Wilkes-Barre, PA. 18701

James A. Swetz, Esquire
Cramer, Swetz & McManus, P.C.
711 Sarah Street
Stroudsburg, PA. 18360-2196

Thomas, Thomas & Hafer, LLP

by

 s/ C. Kent Price
C. Kent Price, Esquire
305 N. Front Street
P.O. Box 999
Harrisburg, PA 17108-0999