UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH HARVEY,<br><br>            Plaintiff<br><br>    v.<br><br>PLAINS TOWNSHIP POLICE DEPT.,<br>EDWARD J. WALSH, RONALD DOMBROSKI,<br>PLAINS TOWNSHIP BOARD OF<br>COMMISSIONERS and JOAN A. CHUKINAS,<br><br>            Defendants | NO. 3:CV-01-1768<br><br>CIVIL ACTION – LAW<br><br><br>JUDGE CAPUTO<br><br>ELECTRONICALLY FILED<br><br><br>JURY TRIAL DEMANDED |

**DEFENDANTS PLAINS TOWNSHIP POLICE DEPARTMENT, EDWARD J. WALSH, RONALD DOMBROSKI AND PLAINS TOWNSHIP BOARD OF COMMISSIONERS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.   FACTS AND PROCEDURAL HISTORY**

On August 11, 1999, Plaintiff obtained a Protection From Abuse ("PFA") with Order from the Court of Common Pleas of Luzerne County against her then-boyfriend, Edward Olowiany. [A copy of the Complaint is attached as Exhibit A, para. 13.] At that time, Plaintiff and Edward Olowiany jointly leased and shared an apartment which was owned by Joan Chukinas and located at 80 East Carey Street, Plains, Pennsylvania. [Exhibit A, para. 12.]

At all times relevant to this incident, including the September 18, 1999 incident itself, Edward Olowiany was named as a tenant on the written lease for the apartment located at 80 East Carey Street, Plains, Pennsylvania and was paying one-half of the rent. [A copy of the pertinent portions of the deposition of Plaintiff is attached as Exhibit B, p. 29.]

1

On August 17, 1999, a hearing was held on the PFA Order, which was granted, and required that Plaintiff be granted exclusive possession of the Residence located at 80 East Carey Street, Plains, Pennsylvania (hereinafter "the Residence") and that Defendant was permitted to pick up his personal belongings. [A copy of the PFA Order is attached as Exhibit C.] At the hearing, Edward Olowiany asked the judge if he could come by in a few days to pick up furnishings and other belongings to which the judge replied that such details would have to be worked out with the Plaintiff. [Exhibit B, pp. 49-50.]

On the same day as the hearing, August 17, 1999, Edward Olowiany went to the Residence to pick up only his personal belongings, such as clothes. [Exhibit B, pp. 44, 61.] On August 30, 1999, Edward Olowiany's attorney, Girard Mecadon, wrote a letter to Plaintiff indicating Mr. Olowiany's desire to pick up the remainder of his belongings in the near future, asking for a time to be set, and setting forth a list of items which Mr. Olowiany claimed to own. [A copy of the August 30, 1999 letter from Girard Mecadon, Esquire to Plaintiff is attached as Exhibit D.] Plaintiff received the letter, opened the letter, read the letter and ignored the letter. [Exhibit B, p. 27, 62, 101.]

Having received no response, on September 15, 1999, Girard Mecadon, Esquire again wrote Plaintiff a letter setting forth a date and time when Edward Olowiany would come to the Residence to pick up the items referenced in the August 30, 1999 letter. [A copy of the September 15, 1999 letter from Girard Mecadon, Esquire to Plaintiff is attached as Exhibit E.] The letter stated that Edward Olowiany would come to the Residence on Saturday, September 18,

1999 at 2:00 p.m. and would be accompanied by the Plains Township Police Department.  [Exhibit E.]  A copy of the letter was sent to the landlord, Joan Chukinas.  [Exhibit E.]

In the morning on September 18, 1999 Edward Olowiany contacted the Plains Township Police Department and explained that he wanted to pick up personal belongings from his Residence but that a PFA Order was in place and he did not want to get into any trouble, but that the landlord was going to be present.  [A copy of the pertinent portions of the deposition of Edward Olowiany is attached as Exhibit F, p. 46-47.]

On September 18, 1999,  Officer Ronald Dombroski was told that police dispatch had spoken with Edward Olowiany and Attorney Mecadon and was in receipt of the August 30, 1999 and the September 15, 1999 letters to Plaintiff.  [Exhibit G, p. 10.]  Officer Dombroski was asked to go to the Residence to keep the peace in case Plaintiff showed up, as there was a PFA Order in effect and Mr. Olowiany was going to be removing items from the Residence.  [A copy of the pertinent portions of the deposition of Officer Ronald Dombroski is attached as Exhibit G, p. 10, 21.]  Officer Dombroski was also given a copy of the August 30, 1999 letter to Plaintiff which listed the items Mr. Olowiany was to remove and a copy of the PFA Order.  [Exhibit G, p. 10-11.]

Officer Dombroski arrived at the Residence at exactly 2:00 p.m.  [Exhibit G, p. 17.]  Edward Olowiany and the landlord, Joan Chukinas, arrived shortly thereafter.  [Exhibit G, p. 17-18.]  At no time was the Plaintiff present or in the

3

Residence during the events that allegedly took place on September 18, 1999. [Exhibit B, p. 65; Exhibit G, p. 28.]

Joan Chukinas, Edward Olowiany and Officer Dombroski went to the door of the Residence and Chukinas asked whether it was alright to open the door, to which Officer Dombroski responded that Mr. Olowiany was there solely to pick up his things and that copies of the letters had been sent to all involved. [Exhibit F, p. 53; Exhibit G, p. 18.] The door to the Residence was opened and Edward Olowiany went about retrieving the items on the list contained in the August 30, 1999 letter. [Exhibit F, p. 50; Exhibit G, p. 21.] Officer Dombroski took no part in helping Mr. Olowiany retrieve his belongings, save making sure that Mr. Olowiany only removed items which were on the list. [Exhibit F, p. 53; Exhibit G, p. 21.]

Officer Dombroski was at the Residence for approximately 45 minutes from arrival to departure, and Edward Olowiany took about 20-25 minutes to get his things. [Exhibit G, p. 24, 31-32.] Edward Olowiany asked Officer Dombroski whether it was alright for him to drop off the items he had already retrieved so that he could return for more, to which Officer Dombroski said no. [Exhibit F, p. 59; Exhibit G, p. 26.]

Plaintiff filed the present Complaint on September 17, 2001, alleging violations of her civil rights pursuant to 42 U.S.C. § 1983. On June 12, 2003, Plaintiff filed a Motion for Partial Summary Judgment as to Defendant Ronald Dombroski. For the reasons set forth below, summary judgment for the Plaintiff in the present case is not warranted.

**II.   QUESTION PRESENTED**

**Should Plaintiff's Motion For Partial Summary Judgment As To Officer Dombroski Be Denied When the Extent of Police Involvement In The Present Case Does Not Rise To The Level Of A Viable Section 1983 Claim?**

**Suggested Answer:**   Yes.

**III.   ARGUMENT**

Defendants respectfully submit that summary judgment in Plaintiff's favor is not warranted in the present case as the police involvement was insufficient for there to be a deprivation of rights under color of state law.

Federal Rule of Civil Procedure 56, governing summary judgment, is a mechanism for "assessing the proof in order to see whether there is a genuine need for trial."  Smith v. CGU, 179 F.Supp.2d 425, 427 (M.D. Pa. 2001). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Id.

In order for a moving party to prevail on a motion for summary judgment, the party must show two things:  (a) that there is no genuine issue as to any material fact, and (b) that the party is entitled to judgment as a matter of law.  Id. at 428.  Under this regimen, a court is required to view the evidence in a light most favorable to the non-moving party.  Id.  Consistent with this principle, the non-movant's evidence must be accepted as true and all reasonable inferences must be drawn in favor of the non-movant.  Id.

5

In the context of a private repossession of property, the mere presence of a police officer "does not, alone, constitute state action causing a deprivation of a protected property interest." Breiner v. Litwhiler, 245 F.Supp.2d 614, 626 (M.D.Pa. 2003). Only if the police presence lends "a cachet of legality and had the effect of intimidating [the plaintiff] into not exercising his right to resist, thus facilitating the repossession," could the requisite exercise of state authority be found. Id. Police officers who merely check documentation and do not appear to take sides do not lend the aura of state authority to the actions of otherwise private actors. Id. Significantly, all of the case law in which a colorable violation of an individual's rights under section 1983 during a private repossession with police presence have involved scenarios where the complainant was present and cognizant of the police presence. Id.; Vakkas v. Tyson Assoc., 2000 U.S. Dist. LEXIS 3827, *8 (E.D.Pa. 2000), a copy of which is attached as Exhibit H.

Further, even when the complainant is present, in the relevant case law there is a spectrum of police involvement at the scene of the repossession. At one end of the spectrum is *de minimis* police involvement not amounting to state action in the aid of the repossession. Barrett v. Harwood, 189 F.3d 297, 302 (2nd Cir. 1999).

Further along the spectrum is greater involvement than mere presence, yet still insufficient to constitute state action in aid of the repossession. Falling into this category is the Fifth Circuit's decision in Manchaca v. Chrysler Credit Corp., 613 F.2d 507, 510-512 (5th Cir. 1980). In Manchaca, the repossessors summoned police officers after the debtor resisted their attempts to take his car.

6

Id. at 510.  Upon arrival at the scene, an officer informed the debtor that "repossession was a civil matter and that the only reason the police were there was to quiet a reported disturbance." Id.  The debtor alleged that one officer also said she was going to arrest the debtor if he did not give the repossessors the keys. Id. at 511-512.  Even though such action by the officers went beyond mere presence, the Fifth Circuit ruled it did not constitute state action vis-à-vis the repossession. Id. at 513.

When an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action.  Barrett, 189 F.3d at 302.  Hence, several circuits addressing the issue of when a police officer was involved either in a repossession or in similar activities, have found state action or have ruled that the issue at least survived a motion for summary judgment.  See e.g., Abbott v. Latshaw, 164 F.3d 141, 146-148 (3rd Cir. 1998) (state action where police officer threatened to arrest debtor who opposed the repossession and placed debtor's lawyer under arrest for disorderly conduct after providing further opposition).

Hence, based on existing case law, the crucial inquiry is whether the police officer was **(1)** present simply to stand by in case there was a breach of the peace, or was **(2)** taking an active role that either affirmatively assisted in the repossession over the debtor's objection or intentionally intimidated the debtor so as to prevent him from exercising his legal right to object to the repossession.

7

Barrett v. Harwood, 189 F.3d 297, 302-303 (2nd Cir. 1999). Added to the fact that all viable cases have involved the complainant being both present and cognizant of the police presence, those courts which have found state action when police officers are involved and the Plaintiff is present during a private repossession have emphasized that the actions of the police officers were such that they could have engendered fear and intimidation on the part of the plaintiffs. Vakkas v. Tyson Assoc., Inc., 2000 U.S. Dist. LEXIS 3827, *22-23 (E.D.Pa. 2000). Thus, the absence of the plaintiff from the scene is a "highly significant, if not crucial, factor in finding state action under section 1983." Id. at *23.

In the present case, Olowiany requested that an officer accompany him to the apartment where he had resided with Plaintiff so that he could obtain the remainder of his belongings. The reason Olowiany asked for an officer to be present was the fact that a Protection From Abuse Order was in place and to make sure that peace was kept while Olowiany took possession of his belongings. Two letters sent to the Plaintiff were presented to the police department, noting the date and time Olowiany was going to come by the apartment to pick up the listed items. An officer, Defendant Dombroski, met Olowiany at the premises.

After asking Officer Dombroski whether it was alright for Olowiany to regain his belongings, Defendant Chukinas allowed Olowiany, co-tenant, into the apartment. Officer Dombroski did not aid Olowiany in the removal of his belongings from the apartment. The officer merely made sure that the items Olowiany removed from the apartment were on the list which was sent to the

8

Plaintiff. The Plaintiff was not present at any time during this period. Officer Dombroski restricted Olowiany to a single load of his personal items, letting Olowiany know that he could not return once he was finished. Once the limited purpose of retrieving his personal belongings was completed, all parties left the apartment.

There are insufficient facts from which Plaintiff can show a deprivation of rights at the hands of the police. This was a case of private repossession where the police were asked to be present merely to keep the peace. As noted above, the mere presence of an officer or the checking of documentation and interaction of officers at the scene is insufficient for a section 1983 violation. Breiner v. Litwhiler, 245 F.Supp.2d 614, 626 (M.D.Pa. 2003). Further, Plaintiff was not present at the scene of this repossession. Every case in which even a viable violation of section 1983 has been found is one where the plaintiff was present at the time of the repossession and was intimidated by the officer in a way which prevented plaintiff from resisting such entry and repossession. Id.; Vakkas v. Tyson Assoc., Inc., 2000 U.S. Dist. LEXIS 3827, *22-23 (E.D.Pa. 2000) (finding it absolutely critical that "no Plaintiff nor representative of any Plaintiff was even present during the incidents giving rise to this lawsuit"). There was no active role taken by Officer Dombroski, the Police Department or the Board of Commissioners in the private repossession of Olowiany's personal belongings short of making sure that the peace was kept and that Olowiany took only those items he previously told Plaintiff via letter he claimed as his. This is insufficient

for state action for a viable Section 1983 claim and therefore, Plaintiff's Motion for Summary Judgment should be denied.

Importantly, Plaintiff's Brief in Support of her Motion for Summary Judgment only partially cites Joan Chukinas's deposition transcript. Plaintiff represents that Chukinas would not have opened the door but for Officer Dombroski's "authorization." See Plaintiff's Brief in Support at page 5. Based on her testimony, this is incorrect.

Joan Chukinas testified that as a tenant on the written lease, Edward Olowiany had the right to come and go into the apartment. A copy of the pertinent portions of Joan Chukinas's deposition testimony is attached as Exhibit I, p. 19. Chukinas was not aware of the Protection From Abuse Order against Olowiany, nor did she know that Plaintiff had exclusive possession of the apartment. [Exhibit I, p. 19.] Given these facts, Joan Chukinas testified that there was no question in her mind as to the propriety of allowing Olowiany to go into the apartment to remove his belongings. [Exhibit I, p. 19.] In fact, Joan Chukinas even testified that her belief was that the police officer was there to maintain the peace. [Exhibit I, p. 20.] Further, Joan Chukinas was of the belief that she would not have been able to prevent Olowiany from entering the apartment because he was a tenant on the written lease. [Exhibit I, p. 20.] Even if Chukinas was aware of the outstanding PFA, she testified that she still would have allowed Olowiany into the apartment to obtain his belongings. [Exhibit I, p. 21.]

In the present case, Officer Dombroski was present during the private repossession by Mr. Olowiany to keep the peace and try to ensure that the only items removed from the premises were listed in the Notice sent to Plaintiff. Defendant Dombroski's actions were consistent with the stated purpose for his presence at the scene of merely keeping the peace. As noted above, Plaintiff was not present at the scene and every viable Section 1983 action in cases such as these has had the complainant present and intimidated by the police officer's presence. This is not the case here. Plaintiff attempts to stretch the facts of this case in order to create greater police involvement than there actually was and, as such, her Motion for Summary Judgment should be denied.

Respectfully submitted,

THOMAS, THOMAS & HAFER, LLP

 s/ C. Kent Price
C. Kent Price, Esquire
Attorney ID # 06776
Shawn E. Smith, Esquire
Attorney ID # 86121
305 North Front Street
P.O. Box 999
Harrisburg, PA. 17108
(717) 255-7101

ATTORNEYS FOR DEFENDANTS PLAINS TOWNSHIP POLICE DEPARTMENT, EDWARD J. WALSH, RONALD DOMBROSKI and PLAINS TOWNSHIP BOARD OF COMMISSIONERS

DATE: June 26, 2003
243076.1

11

## CERTIFICATE OF SERVICE

AND NOW, this 26th day of June, 2003, I, C. Kent Price, Esquire, for the firm of THOMAS, THOMAS & HAFER, LLP, hereby certify that I have this day served the within document(s) by depositing a copy of the same in the United States Mail, postage prepaid, at Harrisburg, Pennsylvania, addressed to:

Robert T. Panowicz, Esquire
Christine M. Trottini, Esquire
Law Office of Robert T. Panowicz
11 West Market Street, Suite 1122
Wilkes-Barre, PA.  18701

James A. Swetz, Esquire
Cramer, Swetz & McManus, P.C.
711 Sarah Street
Stroudsburg, PA.  18360-2196

        Thomas, Thomas & Hafer, LLP

        by

         s/ C. Kent Price
        C. Kent Price, Esquire
        305 N. Front Street
        P.O. Box 999
        Harrisburg, PA  17108-0999