UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH HARVEY,<br><br>　　　　Plaintiff<br><br>　v.<br><br>PLAINS TOWNSHIP POLICE DEPT.,<br>EDWARD J. WALSH, RONALD DOMBROSKI,<br>PLAINS TOWNSHIP BOARD OF<br>COMMISSIONERS and JOAN A. CHUKINAS,<br><br>　　　　Defendants | NO. 3:CV-01-1768<br><br>CIVIL ACTION – LAW<br><br>JUDGE CAPUTO<br><br>ELECTRONICALLY FILED<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS PLAINS TOWNSHIP POLICE DEPARTMENT,
EDWARD J. WALSH, RONALD DOMBROSKI AND PLAINS TOWNSHIP
BOARD OF COMMISSIONERS' REPLY BRIEF IN
SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

### I.  LACK OF STATE ACTION FOR A VIABLE SECTION 1983 CLAIM

Plaintiff attempts to distinguish this case from the multitude of cases dealing with this issue by stating that here there was entry into a residence. Defendants would submit that given the facts of this case, this contention is meritless.

**A.  No Aid In The Repossession**

None of the facts alleged by Plaintiff change the fact that there was no aid provided by Officer Dombroski which would rise to the level of a deprivation of rights under color of state law. While the testimony of Dombroski, Olowiany and Chukinas differed as to where Officer Dombroski was while Olowiany took the items from the apartment, they all agreed that he merely watched Olowiany. Chukinas testified that Dombroski stood in the dining room and watched. [Chukinas depo., p. 10]. Olowiany testified that Dombroski followed him from room to room watching what he took.

[Olowiany depo., p. 50]. Officer Dombroski testified that he and Chukinas went outside onto the grass and watched Olowiany remove items from the apartment. [Dombroski depo., p. 49].

The crucial inquiry is whether the police officer was **(1)** present simply to stand by in case there was a breach of the peace, <u>or</u> was **(2)** taking an active role that either *affirmatively assisted in the repossession over the debtor's objection or intentionally intimidated the debtor so as to prevent him from exercising his legal right to object to the repossession*. <u>Barrett v. Harwood</u>, 189 F.3d 297, 302-303 (2nd Cir. 1999). Added to the fact that all viable cases have involved the complainant being both present and cognizant of the police presence, those courts which have found state action when police officers are involved and the Plaintiff is present during a private repossession have emphasized that the actions of the police officers were such that they could have engendered fear and intimidation on the part of the plaintiffs. <u>Vakkas v. Tyson Assoc., Inc.</u>, 2000 U.S. Dist. LEXIS 3827, *22-23 (E.D.Pa. 2000). Thus, the absence of the plaintiff from the scene is a "highly significant, if not crucial, factor in finding state action under section 1983." <u>Id</u>. at *23.

Here, Plaintiff was not present at the home. Officer Dombroski did not affirmatively aid Olowiany in the repossession of his property. Dombroski's involvement did not rise above the level of neutrality, and all of Dombroski's actions were consistent with his stated purpose that day of keeping the peace. In fact, Chukinas clearly testified that she thought his only involvement was to keep the peace in case Plaintiff was there at the time. [Chukinas depo., p. 20].

Furthermore, Plaintiff appears to make this case akin to warrantless searches of a private citizens' home. In this case, there was no warrantless search of the premises, and there was no aid in the alleged seizure. Taken together, it cannot be said that any alleged deprivation was accomplished under color of state law and thus Defendants are entitled to judgment as a matter of law.

**B.    Access To The Apartment**

Plaintiff appears to argue that what sets this case apart from the well-settled principals previously noted, is that Officer Dombroski allowed Olowiany access to the residence. This is simply not the case.

First, it is worthy of note that no viable section 1983 claim has ever been found when the plaintiff is *not* present. See Breiner v. Litwhiler, 245 F.Supp.2d 614, 626 (M.D.Pa. 2003). More importantly, there are no facts to support any actions by Officer Dombroski other than responding to Chukinas that it was alright to open the door and watching the items being removed. Dombroski's involvement was completely benign in nature, and the alleged deprivation was in no way reliant upon government assistance.

In Sherry v. Associates Commercial Corp., 60 F.Supp.2d 470 (W.D. Pa. 1998), the court found that there was no state action on the part of the police officer because the repossessor did not completely rely upon the government's assistance to effect the deprivation. Id. at 476. In other words, the extent to which the actor relies on governmental assistance and benefits therefrom is a consideration relevant to state action inquiries. Id. The court found that the self-help remedy of repossession was not dependent upon the government's assistance, but was routinely undertaken without the overt, significant assistance of a state official. Id.

In the present case, Joan Chukinas testified that as a tenant on the written lease, Edward Olowiany had the right to come and go into the apartment. [Chukinas depo., p. 19]. Chukinas was not aware of the Protection From Abuse Order against Olowiany, nor did she know that Plaintiff had exclusive possession of the apartment. [Chukinas depo., p. 19]. Given these facts, Joan Chukinas testified that there was no question in her mind as to the propriety of allowing Olowiany to go into the apartment to remove his belongings. [Chukinas depo., p. 19]. In fact, Joan Chukinas even testified that her belief was that the police officer was there to maintain the peace. [Chukinas depo., p. 20]. Further, Joan Chukinas was of the belief that she would not have been able to prevent Olowiany from entering the apartment because he was a tenant on the written lease. [Chukinas depo., p. 20]. Chukinas said that it was likely that she simply gave Olowiany the key to open the door himself. [Chukinas depo., p. 21]. Even if Chukinas was aware of the outstanding PFA, she testified that she still would have allowed Olowiany into the apartment to obtain his belongings. [Chukinas depo., p. 21].

Officer Dombroski was present during the private repossession by Mr. Olowiany to keep the peace and to try to insure that the only items removed from the premises were listed in the Notice sent to Plaintiff. Defendant Dombroski's actions were consistent with the stated purpose for his presence at the scene of merely keeping the peace. As Chukinas' testimony indicates, Olowiany's getting into the apartment to get his belongings was not dependent upon Officer Dombroski being there. Further, as noted above, Plaintiff was not present at the scene and every viable Section 1983 action in cases such as these has had the complainant present and intimidated by the police officer's presence. That is not the case here. Plaintiff attempts to stretch the

4

facts of this case in order to create greater police involvement than there actually was. At most, Officer Dombroski acquiesced to Olowiany obtaining his belongings and it is clear that police acquiescence is insufficient for a viable section 1983 claim. United States v. Coleman, 628 F.2d 961, 964 (6th Cir. 1980). As such, Defendants are entitled to judgment as a matter of law.

C.  **Mistaken Belief Regarding Receipt Of Letter And PFA Order Allowing Olowiany To Retrieve His Personal Belongings**

Plaintiff also contends that the entry into the residence under the false pretense of authority in the letter sent by Olowiany's attorney, a misreading of the PFA Order regarding the ability to retrieve Olowiany's belongings and a false belief that Plaintiff had received notice of the entry renders Defendants liable. Defendants would respectfully submit that the exact opposite is true. Even were the Defendants mistaken about these things, given the facts of this case it is of no matter.

Important to the present case is Sherry v. Associates Commercial Corp., 60 F.Supp.2d 470 (W.D.Pa. 1998). In Sherry, the private repossessor of a truck showed up on the scene with a wrecker and a police car pulled up behind. Id. at 472. The repossessor had a bankruptcy order for two trucks that plaintiff had agreed to surrender, but the bankruptcy court had denied the order on the truck he was currently attempting to repossess as the payments were up to date. Id. The repossessor and debtor confronted one another, and the repossessor notified the debtor that he was taking the truck. Id. As the confrontation grew louder, the police officer approached and the repossessor handed the officer an illegible facsimile of a document. Id. Plaintiff asked the officer if he was going to let the repossessor take the truck with this kind of paperwork, to which the officer responded "yes, they have a repo order." Id.

5

Plaintiff continued to object stating that the repossessor had "no right to the truck." Id. The officer stated that plaintiff had to let the repossessor have the truck. Id. It was at this point that the plaintiff decided to let the repossessor go as "this would have to be settled in court." Id.

Suit was filed against the private repossessors and the police officers involved. Summary judgment was entered against the officer involved, and the claims were thereafter dismissed by the plaintiff who conceded that their claim failed under section 1983 as a matter of law. Id. at 473. However, plaintiff argued that the officers' involvement constituted state action as to the private repossessors. Id.

In that case, the court found that the police officers who arrived at the scene did so to preserve the peace and not to assist the private entity in a repossession. Id. at 475. Rather than take sides, the officer remained at a distance until plaintiff inquired about the repossession, hinting that the officer should intervene on plaintiff's behalf. Id. While the officers' response characterizing the documentation as a "repo order" was legally inaccurate, it did not provide a mantle of authority that enhanced the power of the harm-causing individual. Id.

Importantly, the court went on to note that:

> state actor's mistake of law or erroneous determination of legal responsibility should not be a sufficient basis for shifting the state actor's mantle of authority to the private actor who sought assistance. Something more is required. Were that not so, every request by a party to a dispute that a police officer intervene would have the potential for section 1983 liability where the officer: (1) determined at the scene that one disputant's claim of right was superior to the other's, and (2) that determination was later held to be legally incorrect.

Id.

6

Given the limited involvement of the officer in the present case, as noted above, there was no violation of Plaintiff's rights under section 1983. Moreover, even if the officer and police department were mistaken in believing that the letters sent by Olowiany's counsel were sufficient to put Plaintiff on notice of Olowiany's desire to pick up his belongings, that still does not provide a sufficient basis for a section 1983 violation. Further, such a mistaken belief does not provide a basis for a due process violation based upon lack of notice. In fact, there is no authority Plaintiff produces to suggest that the letter which was sent was not adequate notice. Additionally, Dombroski's allegedly mistaken belief that the letter was sent to and received by all parties involved does not create the mantel of authority Plaintiff must show. See Sherry, Supra. As such, Defendants submit that there is no question of material fact and Defendants are entitled to judgment as a matter of law.

## II. NO VIABLE CLAIM AGAINST DEFENDANTS WALSH, PLAINS TOWNSHIP BOARD OF COMMISSIONERS AND PLAINS TOWNSHIP POLICE DEPARTMENT

Plaintiff has likewise failed to substantiate a cause of action against Defendants Walsh, Plains Township Board of Commissioners ("PTBC") and Plains Township Police Department ("PTPD"). Thus, summary judgment is warranted.

A municipal organization's liability can be predicated only upon acts for which the organization itself is responsible. Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3rd Cir. 2001). Only those municipal officials who have final policymaking authority may by their actions subject the governmental entity to section 1983 liability. Id. The requirement that liability rest on a direct causal link between the municipal policy or

custom and the alleged constitutional deprivation precludes respondeat superior liability. Id.

The official policy or adopted custom that subjects a municipality to section 1983 liability may relate to the training of police officers. Id. A municipality's failure to train its police officers can subject it to liability; however, only where [it] reflects a 'deliberate' or 'conscious' choice by [the] municipality." Id. Moreover, such liability arises only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. Id. The scope of failure to train liability is a narrow one. Id. As the Supreme Court has explained:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

Id. To meet this deliberate indifference standard, Plaintiff must prove that the state actor made a deliberate or conscious choice not to provide training and control to police officers in situations such as this. City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989).

Further, to prove a claim of supervisory liability against Defendant Walsh, Plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's

8

failure to employ that supervisory practice or procedure. Id. at 216. It is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if he superior had done more than he or she did. Id. Rather, the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a relationship between the identified deficiency and the ultimate injury. Id.

In the present case, the Plaintiff has presented no such evidence as to either theory. There had never been a previous complaint to the police department regarding similar facts as the allegations made here. There was no policy in place regarding these kinds of self-repossession cases, and the only instruction given is to keep the peace and to make sure it was done quickly. This is clearly in line with what the law requires as outlined in detail above and in Defendants' previous briefs. Moreover, there is no evidence produced by Plaintiff whatsoever which would tend to show a deliberate indifference on the part of any of the policymaking Defendants. The facts show that officers were instructed according to the state of the law at the time and without prior complaints of incidents like this, it is difficult to imagine a conscious disregard to Plaintiff's rights. As such, Defendants submit that Plaintiff cannot meet her burden and Defendants are entitled to judgment as a matter of law.

### III. IN THE ALTERNATIVE, DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiff boldly states that Abbott v. Latshaw, 164 F.3d 141 (3rd Cir. 1998), resolved the issue of qualified immunity for the due process violation. See Plaintiff's Brief in Opposition, p. 14. Plaintiff's theory is incorrect.

The evidence is clear that Officer Dombroski knew the letter from Attorney Mecadon was sent to Plaintiff. In fact, when Dombroski talked to Chukinas at the residence, he told her that it was alright to open the door since everyone had been sent the letter. Further, the facts in Abbott are clearly distinguishable, especially with regard to Officer George in Abbott, from which Plaintiff quotes.

In Abbott, several police officers appeared on the scene of a private repossession, including Officer George. Id. at 144. After confirming the paperwork, the possessor of the van's attorney appeared on the scene and engaged in a heated discussion with Officer George in which he opposed the repossession. Id. at 145. The attorney boxed the van in so that it could not be taken, opposing the repossession. Id. Officer George then threatened to arrest the attorney if he did not move his vehicle to make way for the van. Id. When the attorney refused, Officer George told the attorney he was under arrest and issued a citation for disorderly conduct. Id.

The court found that there came a point when George's role changed from protector of the peace to enforcer. Id. at 149. In light of the law regarding the involvement of police officers and notice to the owner of property, the court found that George should have known that grabbing and arresting someone who was exercising their rights was impermissible and a jury could find that he joined forces with the repossessor. Id.

The present case is completely different. No such action took place and, in fact, Dombroski had a letter which had apparently been sent to Plaintiff in his hand at the time. The PFA Order allowed Olowiany to pick up his personal belongings, and Olowiany was a tenant on the lease with Chukinas. Given the information that

Dombroski had at the time of the incident, a reasonable officer would not have thought that a clearly established right was being violated. As such, Defendants are entitled to qualified immunity as to any claim under the due process clause.

Plaintiff also claims that as to the Fourth Amendment, a reasonable officer would have known that Plaintiff's rights were being violated. Defendants respectfully disagree.

Officer Dombroski was present during a private repossession by Olowiany to keep the peace. All of his actions were consistent with that stated purpose. Dombroski had a letter from Olowiany's attorney notifying Plaintiff of the date and time that Olowiany was going to come to the house to pick up his personal belongings. The letter even went so far as to state what it was that Olowiany claimed was his and that he would be removing on that date and time. The PFA Order noted that Olowiany was permitted to pick up his personal belongings. Olowiany was a tenant on the lease for the premises. Given this information, it cannot be said that a reasonable police officer would or should have known that a clear right was being violated.

Moreover, as noted above, the police officer in Sherry, supra., and in Haverstick Enterprises, Inc. v. Financial Fed. Credit, Inc., 32 F.3d 989 (6th 1994), was more involved in the repossession than in the present case. In Sherry, the police officer stated that based on his reading of the paperwork the repossessor had, the repossessor was entitled to the items in question and the court found there to be no state action. In Haverstick, the officer detained the possessor of the truck for a brief interrogation while the truck was repossessed and the court found qualified immunity to apply. Officer Dombroski in the present case had far less involvement than in either of these cases, and here Dombroski never spoke with the Plaintiff at all. Given the facts of the present

11

case, a reasonable officer in his position would not have known that his actions constituted invalid participation in a taking. Likewise, Defendant Walsh, possessing the same information as Dombroski did, would not have thought that a clearly established right was being violated. As such, should this Honorable Court determine that a *prima facie* case exists, Defendants are entitled to qualified immunity and are entitled to judgment on all of Plaintiff's claims.

Respectfully submitted,

THOMAS, THOMAS & HAFER, LLP

 s/ C. Kent Price
C. Kent Price, Esquire
Attorney ID # 06776
Shawn E. Smith, Esquire
Attorney ID # 86121
305 North Front Street
P.O. Box 999
Harrisburg, PA. 17108
(717) 255-7101

ATTORNEYS FOR DEFENDANTS PLAINS TOWNSHIP POLICE DEPARTMENT, EDWARD J. WALSH, RONALD DOMBROSKI and PLAINS TOWNSHIP BOARD OF COMMISSIONERS

DATE: July 11, 2003
246142v1

## CERTIFICATE OF SERVICE

     AND NOW, this 11 day of July c003, I, C. Kent Price, Esquire, for the firm of THOMAS, THOMAS & HAFER, LLP, hereby certify that I have this day served the within document(s) by depositing a copy of the same in the United States Mail, postage prepaid, at Harrisburg, Pennsylvania, addressed to:

Robert T. Panowicz, Esquire  
Christine M. Trottini, Esquire  
Law Office of Robert T. Panowicz  
11 West Market Street, Suite 1122  
Wilkes-Barre, PA.  18701

James A. Swetz, Esquire  
Cramer, Swetz & McManus, P.C.  
711 Sarah Street  
Stroudsburg, PA.  18360-2196

                                            Thomas, Thomas & Hafer, LLP

                                            by

                                             s/ C. Kent Price                                       
                                            C. Kent Price, Esquire  
                                            305 N. Front Street  
                                            P.O. Box 999  
                                            Harrisburg, PA  17108-0999