## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELIZABETH HARVEY,              :

     Plaintiff,               :

                                 :       CIVIL ACTION NO. 3:CV-01-1768

          v.                  :

                                 :       (JUDGE CAPUTO)

PLAINS TOWNSHIP POLICE DEPT.,  :
EDWARD J. WALSH, RONALD
DOMBROSKI, PLAINS TOWNSHIP    :
BOARD, JOAN A. CHUKINAS,
                                 :

     Defendants.              :

                                 :

### MEMORANDUM

Presently before the Court are three motions for summary judgement. Plaintiff Elizabeth Harvey's Partial Motion for Summary Judgement against Ronald Dombroski (Doc. 40) will be denied because officer Dombroski is entitled to qualified immunity. Defendant Joan Chukinas's Motion for Summary Judgement (Doc. 42) will be granted because her conduct does not rise to the level of a constitutional violation. Defendants Dombroski, Edward J. Walsh, the Plains Township Police Department, and the Plains Township Board of Commissioners Motion for Summary Judgment (Doc. 46) will be granted. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### BACKGROUND

In June, 1998, Plaintiff Elizabeth Harvey and her then-boyfriend, Edward Olowiany, jointly leased and shared an apartment located at 80 East Carey Street, Plains, Pennsylvania. Both Harvey and Olowiany were listed on the lease as tenants of the apartment. Joan A. Chukinas was the owner and landlord of the apartment.

On August 17, 1999, Harvey obtained a Protection From Abuse Order (hereinafter

PFA) against Olowiany that was issued by the Court of Common Pleas, Luzerne County. The PFA granted Harvey exclusive possession of the apartment and directed Olowiany to retrieve his personal belongings from the apartment the day the PFA was entered, which he did.  At the PFA hearing, Olowiany asked the Common Pleas judge whether he would be able to return to the apartment at a later time to pick up his remaining items, including household furnishings.  The judge told Olowiany that he would need to make arrangements with Harvey to retrieve the rest of his belongings.

Olowiany's attorney, Girard Mecadon, attempted to contact Harvey on two occasions to make arrangements for Olowiany to pick up the remainder of his belongings.  The first time Mecadon attempted to contact Harvey was in a letter dated August 30, 1999.  The letter asked that Harvey select a time for Olowiany to come by, and listed the items that Olowiany planned to retrieve.  Harvey received Mecadon's letter; however, she ignored it.

Mecadon second attempt to contact Harvey was in a letter dated September 15, 1999.  The letter stated that on Saturday, September 18, 1999, at 2:00 p.m., Olowiany, accompanied by a Plains Township police officer, would come to the apartment to retrieve the items that were listed in the August 30, 1999, letter.  Harvey did not receive the letter before September 18, 1999, as she was residing elsewhere during that time.

Officer Ronald Dombroski of the Plains Township Police Department was on duty on September 18, 1999.  Dombroski was dispatched by his supervisor, Sergeant Dave Abraham, to Harvey's residence because Olowiany was going to remove his belongings. Sergeant Abraham had spoken to Olowiany and Mecadon regarding the items and the PFA.  Sergeant Abraham informed Dombroski about the PFA and wanted Dombroski to

2

keep the peace while Olowiany removed his belongings from the residence.  Sergeant

Abraham gave Dombroski the PFA and a copy of Mecadon's letter detailing the items

that Olowiany was seeking to reclaim.

Dombroski, Olowiany, and Chukinas all arrived at Harvey's apartment sometime

around 2:00 p.m. on September 18, 1999.  Harvey was not present at the apartment.

Prior to opening Harvey's apartment door, Chukinas asked Dombroski whether she

should unlock the door.  Dombroski said that he did not see a problem with Chukinas

unlocking the door, because Dombroski believed that everyone had received the letter

that Mecadon sent, which detailed the items that Olowiany planned to retrieve.

Chukinas unlocked the apartment door and Olowiany entered the apartment,

followed by Dombroski and Chukinas.  Dombroski entered the apartment because he did

not want Olowiany taking anything from the apartment that was not on Mecadon's letter;

however, the record is not entirely clear if Dombroski followed Olowiany through the

apartment, or waited outside as Olowiany gathered his belongings.  After loading items

for approximately twenty five minutes, Olowiany's vehicle was filled, and he, along with

Dombroski and Chukinas, left Harvey's apartment.

Harvey alleges violations of her civil rights pursuant to 42 U.S.C. § 1983

(hereinafter section 1983).  On June 12, 2003, Harvey filed a Motion for Partial Summary

Judgment as to Dombroski.  On June 13, 2003, Chukinas filed a Motion for Summary

Judgement, as did Dombroski, Edward J. Walsh, the Plains Township Police

Department, and the Plains Township Board of Commissioners.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c).  A fact is material if proof of its existence or non-existence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248.  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts

4

to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257.

The court need not accept mere conclusory allegations or denials taken from the pleadings. *See Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

Section 1983 does not create any new rights, it merely permits a cause of action for violations of the federal Constitution or federal law. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To succeed in a section 1983 action, a plaintiff must prove that the defendant acted under the color of state law and deprived her of a federally secured statutory or constitutional right. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**1.    Plaintiff's Motion for Partial Summary Judgement as to Dombroski**

Harvey asserts that she is entitled to partial summary judgment against Dombroski because he violated her Fourth Amendment rights. Specifically, Harvey contends that Dombroski's entry into her apartment constituted a search, and, by allowing Olowiany to remove items from the apartment, Dombroski actively participated in seizing Harvey's personal property.

Dombroski contends that his conduct was insufficient to rise to the level of a viable section 1983 claim. Dombroski asserts that he was simply present at the apartment to

ensure there would be no breach of the peace, and that he did not aid Olowiany in the removal of items from the apartment. Alternatively, Dombroski asserts the defense of qualified immunity.

### A.    Qualified Immunity

"Qualified immunity shields public officials performing discretionary functions from section 1983 and Fourteenth Amendment liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Abbott v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Third Circuit Court of Appeals two-step analysis is instructive to determine whether a public official is protected by qualified immunity. *Id.* First, the Court must determine whether Dombroski violated clearly established rights. *Id.* Second, the Court must determine whether a reasonable officer could have believed that Dombroski's conduct was lawful, in light of clearly established law and the information available to Dombroski at the time of the incident. *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997). Dombroski is entitled to immunity if he reasonably but mistakenly concluded that his conduct comported with the requirements of the Fourth Amendment. *Id.*

The law was unquestionably clear in September, 1999, that the Fourth Amendment prohibited unreasonable searches and seizures of a person's home by the police without a warrant. *Payton v. New York*, 445 U.S. 573, 583-85 (1980). Because people have a right to be secure in their home and property, police may enter a person's home only upon a warrant, or under one of the enumerated exceptions to the warrant

6

requirement. *U.S. v. Gori*, 230 F.3d 44, 50 (2d Cir. 2000). Dombroski's entry into

Harvey's apartment violated clearly established rights, namely, a violation of the Fourth

Amendment.

Dombroski had a copy of the PFA, which granted Harvey exclusive possession of

the residence. Because the PFA granted exclusive possession to Harvey, Olowiany

could not authorize Dombroski's entry into the apartment. Chukinas, the landlord, also

lacked authority to consent to entry of the apartment. *See Chapman v. U.S.*, 365 U.S.

610, 616-17 (1961). Dombroski entered Harvey's apartment without a warrant and

without any exception to the warrant requirement being applicable, and, therefore,

violated Harvey's clearly established right to be secure in her home and property.

Having established that Dombroski violated a clearly established right, the Court

now must determine whether a reasonable officer could have believed that Dombroski's

conduct was lawful, in light of clearly established law and the information known to

Dombroski at the time of the incident.

Dombroski's conduct was reasonable, particularly in light of the information known

to him at the time. Dombroski was ordered by his shift supervisor, Sergeant Abraham, to

proceed to Harvey's residence to keep the peace while Olowiany retrieved his

belongings. Sergeant Abraham told Dombroski that he had spoken to Olowiany and his

attorney, Mecadon, regarding the items in the apartment and the PFA. Sergeant

Abraham gave Dombroski the PFA and a copy of Mecadon's letter that detailed the items

that Olowiany was seeking to reclaim.

When Dombroski arrived at Harvey's residence, he met Chukinas, the landlady.

Chukinas asked Dombroski whether she should unlock the door to the apartment.

Dombroski said that he did not see a problem with Chukinas unlocking the door, as he had spoken to his sergeant regarding the matter, and Dombroski believed that Harvey and Chukinas had received the letter that detailed the time and items that Olowiany planned to retrieve.  This belief was reasonable because the letter indicated that copies were sent to Harvey and Chukinas.

As far as Dombroski knew, the necessary arrangements had been made for Olowiany to retrieve his belongings, and his role was simply to keep the peace. Dombroski reasonably believed that by allowing Chukinas to unlock the door, and his entering the apartment, he was acting to keep the peace.  Chukinas unlocked the apartment door, and Olowiany entered the apartment, followed by Dombroski and Chukinas.  Dombroski entered the apartment because he did not want Olowiany taking anything that was not on the letter.

Dombroski's conduct was reasonable, notwithstanding the Third Circuit Court of Appeals admonition that "[a]t the heart of *Fuentes* is the principle that it is not for law enforcement officers to decide who is entitled to possession of property." *Abbott*, 164 F.3d at 149.  The court added that "[r]easonable police officers should know from the established precedent of *Fuentes* that their role is not to be participants in property deprivations without notice and an opportunity to be heard." *Id.*  In this case, Dombroski was not deciding who was entitled to possession of property.  Rather, Dombroski was acting under a belief that the owner of property was retrieving possessions with permission from the possessor.  Given the established law and information known to Dombroski at the time, I find that Dombroski's conduct was reasonable.  Accordingly, Dombroski is entitled to qualified immunity against Harvey's Fourth Amendment claim.

8

Harvey's Partial Motion for Summary Judgment with respect to Dombroski is denied. Because Dombroski's actions are immune as a matter of law, I will grant Dombroski's Motion for Summary Judgment.

**2.    Joan Chukinas**

"Although not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983." *Abbott*, 164 F.3d at 147-48 (citing *Dennis v. Sparks*, 449 U.S. 24, 27-8 (1980)).  Harvey alleges that by acting in concert with Dombroski, Chukinas's actions resulted in a deprivation of Equal Protection in violation of the Fourth, Fifth, and Fourteenth Amendments.  Harvey contends that Chukinas was a joint participant with Dombroski when they entered the apartment.

"State action is a threshold issue in a Fourteenth Amendment claim." *Id.* at 146. To act under color of law requires that the person liable under section 1983 "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.*  Chukinas was neither acting under color of law, nor was she acting in concert with Dombroski.  There are no set of facts present that may fairly be said to show Chukinas to be a state actor, or clothed with the authority of state law.  Chukinas did not unlock the door by asserting state power or authority, rather, she asked Dombroski whether she should unlock the apartment door. Only after Dombroski told Chukinas that he did not see a problem with unlocking the door did she unlock the door.

There is equally little evidence showing that Chukinas acted in concert or as a joint

9

participant with Dombroski. There are no allegations or facts to support a showing that Dombroski and Chukinas were acting together. Dombroski was dispatched to the apartment by his supervisor with instructions to keep the peace. Chukinas, on the other hand, received a letter from Olowiany's attorney informing her of the date and time when Olowiany would be retrieve his belongs. Chukinas was so unsure of whether she should unlock the door, she essentially asked Dombroski for permission to unlock the door. Only after getting Dombroski's approval did Chukinas unlock the door.

I find as a matter of law that Chukinas's conduct does not rise to the level of a constitutional violation. Chukinas neither acted under color of law, nor did she act in concert with Dombroski. Accordingly, Chukinas's Motion for Summary Judgment will be granted.

## 3.    Edward J. Walsh

Harvey alleges that Edward J. Walsh, Chief of Police for the Plains Township Police Department, is individually liable for failing to adequately train, supervise, and discipline Dombroski. As a preliminary matter, there is no respondeat superior liability under section 1983. *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978). It is insufficient to allege that because Chief Walsh is in a supervisory position, he should be held liable for Dombroski's actions. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207-08 (3d Cir. 1988) (citing *Parratt v. Taylor,* 451 U.S. 527, 537 n.3 (1981)). Personal involvement must be alleged with appropriate particularity and can be shown through either

10

allegations of personal direction or actual knowledge and acquiescence. *Id.*

To establish supervisory liability under section 1983, the supervisor must exhibit a deliberate indifference toward the plight of the person deprived. *Sample v. Diecks*, 885 F.2d 1099, 1117-18 (3d Cir. 1989). "The standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities that they serve." *Id.* For Harvey to prevail on a claim of supervisory liability, she must identify specific supervisory failures of Chief Walsh that evidence deliberate indifference, and she must show a close causal relationship between the deficiency and the ultimate injury. *Id.*; *Telepo v. Palmer Twp.*, 40 F. Supp. 2d 596, 612-13 (E.D. Pa. 1999).

Harvey has failed to identify specific failures by Chief Walsh that demonstrate deliberate indifference, and she has not offered any evidence to show a close causal relationship between Chief Walsh's alleged failure and her injury. Harvey alleges Chief Walsh failed to adequately train and supervise his officers; however, she offers no specific evidence showing how Chief Walsh was deliberately indifferent to her rights. I find that Harvey has failed to identify or present evidence of specific failures committed by Chief Walsh. Accordingly, I will grant summary judgment with respect to the supervisory liability claim against Chief Walsh.

4.    **Plains Township Police Department and the Plains Township Board of Commissioners**

Harvey alleges that the Plains Township Board of Commissioners (hereinafter PTBC), is liable for failing to properly train Dombroski with respect to search and seizure and third party consent for PFA orders. Harvey contends that Plains Township police

11

officers often accompany individuals who are retrieving their belongings after being evicted by a PFA order.  Harvey alleges that because there was no official policy or procedure on how to handle such situations, Plains Township is liable for any constitutional violation that Dombroski caused.  Plains Township counters that Harvey has failed to carry her burden by not producing any evidence showing specific involvement by either the police department or the PTBC.

"A municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).  To sustain such an action, the failure to train must amount to a deliberate indifference to the rights of the impacted person.  *Id.*  There must be a deliberate or conscious choice by the municipality to not train before a municipality may be held liable under section 1983.  *Id.*  Essentially, a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the alleged injury.  *Id.* (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)).

"The focus in this determination is on the adequacy of the training program in relation to the tasks the particular officers must perform and the connection between the identified deficiency in the municipality's training program and the ultimate injury." *Id.*  To succeed, Harvey must identify a failure to provide specific training that has a causal connection with her injuries, and she must also demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to potential constitutional deprivations.  *Id.*

12

Harvey has failed to carry her burden.  Harvey has not identified a failure to provide specific training that could reasonably be expected to prevent such a constitutional violation.  The evidence shows that the Plains Township Police Department did not customarily handle PFA orders.  Dombroski testified that the Sheriff's Department normally serves PFA orders.  Only in an emergency situation and when the parties reside in Plains Township would the Plains Township Police Department serve a PFA order.  While this case is not about serving PFA orders, it suggests that the lack of policy on how to handle the type of situation that arose in this case is based on a lack of PFA encounters.  Moreover, Police Chief Walsh testified that prior to the Harvey incident, he had never received a complaint regarding similar conduct.

Harvey has not offered any evidence showing that the PTBC made a deliberate or conscious decision to not train its police officers in how to properly handle the situation Dombroski encountered on September 18, 1999.  I find that Harvey has not presented evidence of a failure to provide specific training that could reasonably be expected to prevent such a constitutional violation.  Accordingly, I will grant the PTBC's and the Plains Township Police Department's Motion for Summary Judgment.

## CONCLUSION

Plaintiff Elizabeth Harvey's Partial Motion for Summary Judgement against Ronald Dombroski (Doc. 40) will be denied.  Defendant Joan Chukinas's Motion for Summary Judgement (Doc. 42) will be granted.  Defendants Dombroski, Edward J. Walsh, the Plains Township Police Department, and the Plains Township Board of Commissioners Motion for Summary Judgment (Doc. 46) will be granted.

An appropriate order will follow.


_December 29, 2003_
Date

_A. R. Caputo_
A. Richard Caputo
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELIZABETH HARVEY,                         :
                                          :
    Plaintiff,          :
                                          :
                                          :    CIVIL ACTION NO. 3:CV-01-1768
    v.                  :
                                          :    (JUDGE CAPUTO)
PLAINS TOWNSHIP POLICE DEPT.,             :
EDWARD J. WALSH, RONALD                   :
DOMBROSKI, PLAINS TOWNSHIP                :
BOARD, JOAN A. CHUKINAS,                  :
                                          :
    Defendants.         :
                                          :

## ORDER

**NOW**, this 29th day of December, 2003, **IT IS HEREBY ORDERED THAT:**

1)    Plaintiff Elizabeth Harvey's Partial Motion for Summary Judgement (Doc. 40) is **DENIED**.

2)    Defendant Joan A. Chukinas's Motion for Summary Judgment (Doc. 42) is **GRANTED**.

3)    Defendants Ronald Dombroski, Edward J. Walsh, the Plains Township Police Department, and the Plains Township Board of Commissioners' Motion for Summary Judgement (Doc 46.) is **GRANTED**.

4)    Defendant Joan A. Chukinas's Motion to Compel Medical Examination (Doc. 51) is **DENIED** as moot.

5)    The Clerk of the Court shall mark this case **CLOSED**.

_____
A. Richard Caputo
United States District Judge

15